IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLIN LUCZYNSKI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 23-cv-17184 |
| POLICE OFFICER JOROAN, POLICE OFFICER SUAREZ, CITY OF CHICAGO, | ) ) Judge John J. Tharp, Jr. ) ) ) |
| Defendants. | ) ) |

**ORDER**

For the reasons set forth in the Statement below, the defendants' motion to dismiss the complaint [18] is granted. The complaint is dismissed with prejudice. Judgment order to follow. Civil case terminated.

**STATEMENT**

In his complaint, plaintiff Colin Luczynski alleges that during or shortly after his visit to the Walgreens located at 740 W. Diversey Pkwy, Chicago, IL on September 10, 2022, the store's staff (a private security guard) called the police to report—falsely and without justification, according to him—that he had stolen some merchandise. Compl. ¶¶ 4-5. Soon thereafter, "without just cause and provocation, Defendants Officers JOROAN #4569 and SUAREZ #15370 savagely rushed and tackled Plaintiff COLIN LUCZYNSKI to the ground and bent his arms and shoulders in an attempt to detain him," thus injuring him physically and emotionally. Compl. ¶¶ 10-11. He further alleges that the defendant officers handcuffed him and arrested him for the theft without probable cause and even though he had not broken any laws. Compl. ¶¶ 17-21. Based on these allegations, Luczynski seeks to hold Chicago Police Department officers Joroan and Suarez liable for excessive force and false arrest pursuant to 42 U.S.C. § 1983. He also seeks to hold their employer, the City of Chicago, liable for indemnification.

The defendants have filed a motion to dismiss disputing Luczynski's version of the facts and arguing that their conduct was entirely lawful. Luczynski never responded to the motion.[1]

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v.*

---

[1] Luczynski was represented by counsel when this case was filed. Counsel moved, and were permitted, to withdraw. ECF Nos. 13 and 17. The Court advised Luczynski that he needed to retain new counsel or file a *pro se* appearance, but he did neither and has not responded to the defendants' motion.

*Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). A plaintiff need not plead facts corresponding to every element of a legal theory. *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017). Instead, the plaintiff need only plead a plausible claim. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). In deciding a motion to dismiss, the Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* Pro se complaints are construed liberally in favor of the pro se plaintiff. *Balle v. Kennedy*, 73 F. 4th 545, 557 (7th Cir. 2023).

In support of their motion, the defendants offer footage from one of the defendant officers' body-worn cameras ("BWC footage"). The BWC footage's timestamps indicate that it was captured on September 10, 2022, which matches the date of the events alleged in the complaint. The defendants aver that the BWC footage depicts the entirety of the interaction between the officers and Luczynski that gives rise to the complaint. Upon review of the footage, this appears to be true. Luczynski does not contest it.

"Generally, in deciding a motion to dismiss, courts cannot consider evidence outside the pleadings; considering that type of evidence requires converting the motion to a motion for summary judgment under Rule 56." *Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *8 (N.D. Ill. Sept. 24, 2013) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). But, as the defendants rightly point out, the Court "may take judicial notice of facts in the public record without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Here, the accuracy of the video footage has not been challenged in any way. And when there is video evidence of uncontested authenticity that "utterly discredit[s]" the plaintiff's version of the story, courts are not required to afford customary deference to the non-movant's averments. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). In *Scott*, the Supreme Court held that rather than rely on the non-movant's "visible fiction" in such cases, courts should "view[] the facts in the light depicted by the videotape." *Id*. at 381. Following *Scott*, the Seventh Circuit has similarly credited video evidence that "blatantly contradicted" the plaintiff's account of the relevant events. *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).[2]

---

[2] *Scott* and *Williams* were decided on summary judgment, rather than on motions to dismiss, but the rationale for dispensing with standard deference to the facts asserted by the non-movant when there is a clear and undisputed video record applies equally in either context. *Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *9 (concluding that "it is likely that the Supreme Court would likewise have considered the video had they heard the case at the motion-to-dismiss stage"). The distinction between these motions is particularly inconsequential in a case, such as this one, in which the plaintiff has not responded to a motion to dismiss; there is no basis to believe that the plaintiff would respond to a summary judgment motion were the court to convert the defendant's motion given his failure to respond to the motion to dismiss. Whether the motion to dismiss were converted or not, the court would be left with a review of the video juxtaposed

2

The BWC footage begins with the uniformed officers driving in a marked squad car (*i.e.,* there is no basis for the plaintiff to claim that he did not know that the people approaching him in front of the store were police). Their vehicle's laptop indicates they are responding to a call at the same address as the Walgreens (740 W. Diversey). They meet someone in the parking lot— presumably Walgreens' private security officer, whom Luczynski references in the complaint— and she gives them a description of a shoplifter (the only audible portions are: gray sweater, shoulder length blonde hair). After entering the store and speaking with other employees who gave another description (white male, medium-length and dirty blonde hair, early 30s, brown eyes, facial hair, gray sweatpants, sandals, about 5'6" or 5'7", slightly tan, baggy sweatshirt, wearing a dark gray backpack). As they are discussing the incident with the employees, somebody (it is unclear if they are just a bystander or another employee) spots him walking outside the store and points him out to the officers. It is about 11 minutes and 45 seconds into the BWC footage when the officers see the plaintiff, whose appearance very closely matches the employees' descriptions.

The officers then approach Luczynski with a walking pace, greet him, and reach for his arms and backpack. There is some light struggle for a couple of seconds while Luczynski resists the officers, but they ultimately apprehend him in a firm, but not particularly aggressive, manner, with each officer holding one of his arms as they explain that resisting by battering a police officer is a worse charge than retail theft. As the encounter proceeds, Luczynski rants at the officers, demanding that they turn their BWC's on (they were), provide their badge numbers, and protect the "federal evidence" he had in his backpack. They take off his backpack, remove his belongings from his pockets, and handcuff him. The officers then walk him to the parking lot and put him in the backseat of their squad car while Luczynski berates them, threatens to have their jobs, and asserts that the FBI and Pentagon officials will soon intervene. One officer then tries to take down his information (name, date of birth) while the other confers with the Walgreens employees, who decide not to charge him. Luczynski appears to calm down once in the backseat. The officers then check for warrants and, finding none, ask him to step out, remove the handcuffs, and return his bag to him. The officers also try to determine which of the objects (*e.g.*, butter, bottle of wine) had been taken from the store. The officers eventually give Luczynski a receipt documenting the interaction, tell him not to return to that particular Walgreens location, and the parties part ways. The entire encounter took about 15 minutes.

The BWC footage thus contradicts the allegations in the complaint. The officers never "savagely rushed and tackled" Luczynski "to the ground." Nor did they lack "just cause and provocation" when they arrested Luczynski; it is clear from the video that he matched the description of a shoplifter given to them by the Walgreens employees just moments beforehand. Upon the Court's review of the BWC footage, it is also clear that the officers did not violate any of Luczynski's constitutional rights.

"A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." *Abbott v. Sangamon County,*

---

against the allegations of the complaint. The outcome of that review would be no different on summary judgment than it would be on a motion to dismiss. Here, the procedural posture of the case simply doesn't matter.

3

*Illinois*, 705 F.3d 706, 724 (7th Cir. 2013). "[E]ven when an officer has probable cause to arrest, the Fourth Amendment prohibits him from employing greater force than is reasonably necessary to make the arrest." *Id.* (cleaned up). In evaluating whether the force used was reasonably necessary, the Court must consider "the totality of the facts and circumstances known to the officer at the time the force is applied." *Id.*

Based on the BWC footage, any claim that officers Joroan and Suarez engaged in excessive force would fail. They calmly stopped Luczynski, grabbed his arms firmly but not in an unusual or particularly violent manner, put handcuffs on him, and put him in the backseat of the cruiser while they collected further information. They did not delay in removing his handcuffs upon confirming his identity and determining that he would not be charged—despite still being in the process of ascertaining whether any of the items he had on his person were stolen merchandise. "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest . . . ." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). This was a routine arrest involving only the minimal degree of force needed to handcuff the plaintiff, who initially resisted the officers' efforts and thereby escalated the degree of force needed to accomplish that task. "[A]n officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Id.* The video shows that the officers did not depart from this rule.

The officers had probable cause to arrest Luczynski. Therefore, Luczynski cannot state a plausible false arrest claim. "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott*, 705 F.3d at 713-14. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714. Luczynski matched the highly specific descriptions provided by multiple Walgreens employees. The officers spotted him right outside of the store shortly after the alleged theft occurred. Courts have found probable cause under substantially less compelling circumstances. *See, e.g.*, *Pasiewicz v. Lake County Forest Pres. Dist.*, 270 F.3d 520, 522, 524-25 (7th Cir. 2001) (probable cause to arrest suspect who bore "fair resemblance" but "did not match exactly" witnesses' descriptions as to age, height, weight, and hairstyle).

In short, the accusations leveled by Luczynski are patently untrue. And contrary to those baseless averments, the video footage shows that the defendant officers' use of force was measured and professional, and the circumstances supported a finding of probable cause supporting the arrest. The defendant officers should be commended for their restraint and demeanor throughout this encounter rather than being subjected to the calumny that attends being named as a defendant in a lawsuit alleging civil rights violations. Although plaintiffs are typically afforded at least one opportunity to amend a complaint dismissed for failure to state a claim, in light of the video record, it is inconceivable that Luczynski could amend his complaint to state a plausible claim for excessive force or false arrest based on the same encounter. Accordingly, this dismissal is with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"). Further, given that the plaintiff's allegations are demonstrably false, the Court is not inclined to give Luczynski further license to

disparage the defendants. And in any event, Luczynski failed to respond to the motion to dismiss or challenge the authenticity of the footage, so he has waived any counterarguments.

Dated: June 24, 2024

*John J. Tharp*

John J. Tharp, Jr.
United States District Judge